William Z. Kransdorf (WK 9364)
NYC Bankruptcy Assistance Project
at Legal Services NYC
40 Worth Street, Suite 606
New York, NY 10013
Tel: (646) 442-3646 Fax: 646-859-8698
wkransdorf@lsnyc.org

Attorneys for Debtor Harold Rolley

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
In re:
Harold Jermaine Rolley                                                       Case No. 23-11591-pb
                                                                             Chapter 13
      Debtor
------------------------------------------------------------ X

**Attorney Affirmation in Reply to Respondent's Reply to Debtor's Objection to Proof of Claim Number 1-1**

William Z. Kransdorf, an attorney duly admitted to practice before this court affirms under penalty of perjury, as follows:

1. I am the attorney for the debtor in the above case and I am making this affirmation in support of a motion objecting to the Amendment to Claim Number 1-1, filed by Board of Managers of Parkside Place Condominium ("Parkside") in the amount of $55,355.53.

2. With respect to Parkside's position in paragraph 3 of their reply, that the Common Charges payment that came due on October 1, 2023 was somehow in default on October 4, 2023 we respectfully disagree. We are in agreement that the due date for common charge payments is the first of the month. Mr. Amorello quotes the Condominium Bylaws which state that payments which "remain unpaid *more than 15 days after the due date…*" That is clearly not the October payment, because it is not in a default. Only arrearages may be included in a Chapter 13 Plan.

3. Assuming arguendo, the October common charge should be included in the claim there is no basis for including the November charges, as Respondent has done. See Respondent's Exhibit Proof of Claim 1-1 filed by Parkside Place at Exhibit Page 7 (page 14 of the pdf).

4. Respondent's Reply after paragraph 4 segues into a reply to an argument that we did not make—that Attorney fees and costs were not part of common charges. However, since Respondent has raised this issue, let us consider it. The general rule is that parties to any litigated matter must each bear the cost of their own legal representation, in the context of a foreclosure proceeding. *See In re Wasson*, 402 B.R. 561, 565 (Bankr. W.D.N.Y. 2009). The Wasson case allows for recovery of legal costs when the mortgage authorizes it, but only if such costs are reasonable. Here, legal fees total $8,992.50, with no billings, no descriptions, no basis for determining the reasonableness of those fees.

5. Note as well that all but $425 of the legal fees listed in Parkside's Claim occurred AFTER the formation of the lien on March 31, 2022 (and even that $425 is not included on the list of charges appended to that lien). They should therefore not be treated as secured by the lien. See Respondent's Exhibit A, at Exhibit page 10.

6. For the above reasons, attorney fees and costs should not be included in the claim, or if they are included, they should be treated as unsecured by the lien.

7. The discrepancy between the ledger supporting the Proof of Claim and prior statements by Parkside—the quote from Rachel Lust and the March, 2023 statement[1]—must be read against Parkside as prior contemporaneous statements as the status of the account—prior to the ledger that Parkside generated in November, 2023, to support their claim. In fact,

---

[1] Two points of clarification with respect to the communication from Rachel Lust: she was not "prior counsel," but a prior attorney at Mr. Amorello's firm, Smith Bus and Jacobs. Also, her communication was in the form of an email, not a text.

the ledger supporting Parkside's claim is out of step with the ledger supporting the lien that was filed in 2022. For example, the ledger that accompanies lien gives the balance due for December, 2017, as $4,602.40, whereas the Proof of claim leger gives that balance as $5,318.12. By April, 2022—the last date in the lien ledger, the balance due was reported as $18,536.98; the Proof of claim ledger gives that amount as 30,650.70. See: Respondent's Exhibit A at Exhibit pages 7 and 14. No explanation has ever been given for the discrepancy between these two ledgers.

8. As noted, the Debtor has not regularly received, nor been able to obtain, monthly Common Charges statements. So our contemporaneous statements for comparison are somewhat limited. But between the March 1, 2023 Statement and the July 1, 2023 statement, there is a jump in the balance due of $24,571.83. Strange that even the Parkside ledger created for the Proof of Claim only shows additional charges in that period of $7,187.97—minus payments by the Debtor of $725, for a net increase of $6,462.97. How then, does Respondent explain the $24,571.83 discrepancy between the March 1 and July 1, 2023 statements?

9. Again, the statements and Rachel Lust's email are consistent with the numbers in the Lien ledger, but not the July statement or the ledger attached to the Proof of Claim.

**CONCLUSION:**

In the absence of any explanation for these multiple discrepancies between the Claim and the available contemporaneous documentation, the discrepancies must be read against the respondent. And in lieu of the unreliability of Parkside's accounting of these charges, the claim should be revised to reflect the balance of the March, 2023 statement balance. In addition, attorney fees and costs, to the extent they are included in the claim, should be treated as

unsecured.

Debtor respectfully requests that the Court amend the Claim accordingly, and provide such other and further relief as the Court deems appropriate.

Dated: June 2, 2025

By: _/s/_ William Z. Kransdorf____
William Z. Kransdorf, Esq.
NYC Bankruptcy Assistance Project
Legal Services NYC
40 Worth Street, Suite 606
New York, NY 10013
Attorneys for Debtor